UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CHRISTY BROWER, *et al.*,
on behalf of themselves and
others similarly situated,

                Plaintiffs,

-against-                                    1:25-CV-557 (LEK/PJE)

THE NORTHERN TRUST COMPANY, *et al.*,

                Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.**      **INTRODUCTION**

On May 2, 2025, Plaintiffs Christy Brower, Laura Truesdell and Marine Casserino (collectively "Plaintiffs") commenced this action on behalf of themselves and all other similarly situated persons against Defendants Northern Trust Company ("Northern Trust"), Harold H. Demarest Jr. and Franklin C. Demarest, as both co-personal representatives of the estate of Anne D. Taft, and in their individual capacities (collectively "Defendants"). Dkt. No. 1 ("Complaint"). Defendants filed a motion to dismiss on July 28, 2025, Dkt. No. 23 ("Motion"), Plaintiffs filed a response, Dkt. No. 26 ("Response"), and Defendants replied, Dkt. No. 29 ("Reply").

For the reasons that follow, Defendant's Motion is granted.

**II.**      **BACKGROUND**

### A. Factual Background

The following facts are set forth as alleged in the Complaint.

Plaintiffs Brower, Truesdell and Casserino were employed by Defendants to provide care for decedent Anne Demarest Taft ("Decedent"). Compl. ¶¶ 36–39. Brower was employed by

Defendants from September 2019 until shortly after Decedent's death on January 8, 2024. *Id.* ¶ 36. Truesdell was employed by Defendants from September 2018 until shortly after Decedent's death on January 8, 2024. *Id.* ¶ 37. Casserino was employed by Defendants from "October/November 2020 through December 23, 2023." *Id.* ¶38.

Plaintiffs provided comprehensive caretaking services for Decedent including "taking the car for maintenance, obtaining home maintenance quotes and services, grocery shopping, meal preparation, pharmacy and other errands," among other tasks. *Id.* ¶ 39. During the time they worked for Defendants, "plaintiffs worked 24-hour live-in shifts." *Id.* ¶ 64. They did not "receive any uninterrupted meal breaks" and were not "paid overtime. . . for all hours worked in excess of forty (40) for each work week." *Id.* ¶¶ 66–67.

Plaintiffs worked for Defendants and provided the aforementioned services for Decedent "at her home in Binghampton, Broome County, New York" until May 2023. *Id.* ¶ 43. "In early 2023, Decedent secured a short-term rental for a few months" in the State of Florida. *Id.* ¶ 49. "In or around May 2023, Decedent purchased a home in Clermont, Florida." *Id.* ¶ 52. During this time, Plaintiffs continued providing services for Decedent in Florida until Decedent's death in January 2024. *Id.* ¶¶ 49, 53.

Defendants Harold and Franklin Demarest are the Decedent' sbrothers. *Id.* ¶ 51. They "became Power of Attorney over Decedent in or around March 2023." *Id.* Harold Demarest "is a resident of Corvallis in Benton County, Oregon." *Id.* ¶ 18. Franklin Demarest "is a resident of Pomfret Center in Windham, Connecticut." *Id.* ¶ 19.

Defendant Northern Trust Company is headquartered in Chicago, IL, and "conducted business related to this matter in Binghampton, Broome County, New York." *Id.* ¶ 17.

2

**B. Statutory Background**

Section 733.702 of the Florida Probate Code states in relevant part:

> If not barred by Section 733.710, no claim or demand against the decedent's estate that arose before the death of the decedent, . . . and no claim for damages, including, but not limited to, an action founded on fraud or another wrongful act or omission of the decedent, is binding on the estate, on the personal representative, or on any beneficiary unless filed in the probate proceeding on or before the latter of the date that is 3 months after the time of the first publication of the notice to creditors or, as to any creditor required to be served with a copy of the notice to creditors, 30 days after the date of service on the creditor, even though the personal representative has recognized the claim or demand by paying a part of it or interest on it or otherwise.

Fla. Stat. Ann. § 733.702.

## III.   LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." *Id.* at 556.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court has stated that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

3

accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. *Id.* at 679.

## IV.   DISCUSSION

Plaintiffs brought six Claims against the Defendants: (1) Unpaid Overtime in Violation of the Fair Labor Standards Act against Northern Trust and the Demarest Defendants in their capacities as co-personal representatives of the estate; (2) Unpaid Overtime in Violation of the FLSA against Harold Demarest in his individual capacity; (3) Unpaid Overtime in Violation of the FLSA against Franklin Demarest individually; (4) Unpaid Overtime in violation of the New York Labor Law ("NYLL") against Defendants as co-personal representatives of the Estate; (5) Unpaid Overtime in Violation of the NYLL against Harold Demarest individually; and (6) Unpaid overtime in Violation of the NYLL against Franklin Demarest individually. Compl. at 10–17. The Court will address each of these claims in turn.

### A.  Claims against the Estate

Defendants argue that Plaintiffs' claims against Northern Trust, and Harold and Franklin Demarest ("Demarest Defendants") as co-personal representatives of Decedent's estate are time-barred by Section 733.702 of Florida probate law. Mot. at 5–8. Plaintiffs in turn argue that the Fair Labor Standards Act ("FLSA") preempts Section 733.702. *See* Resp. at 10–13. The Court agrees with Defendants for the reasons discussed below.

The Supremacy Clause of the Constitution states in relevant part that "the Laws of the United States. . . made under the Authority of the United States, shall be the supreme Law of the Land." U.S. Const. Art. VI, Cl. 2. It is well settled that this language grants Congress "the power to preempt state law." *Arizona v. United States*, 567 U.S. 387, 399 (2012) (collecting cases). The

4

principal question in every preemption case is therefore whether Congress intended to exercise its preemption powers. *See in re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 725 F.3d 65, 96 (2d Cir. 2013) ("MTBE").

There are two general categories of preemption: express and implied. *See Gade v. National Solid Waste Management Ass'n*, 505 U.S. 88, 98 (1992). Express preemption occurs when "Congress expressly provides that a federal statute overrides state law," and the state law "falls within the scope of Congress's intent to preempt." *MTBE*, 725 F.3d at 96–97. Implied preemption, on the other hand, applies where Congress's intent to preempt can be found in the "structure and purpose" of the statute. *Gade*, 505 U.S. at 98 (citations omitted).

The Supreme Court has recognized two discrete situations where Courts can find that Congress impliedly preempted state law: field preemption and conflict preemption. *See Arizona*, 567 U.S. at 399. First, federal law preempts any state law in those fields where "federal regulation [is so] pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Fidelity Federal Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

Second, the Supreme Court has instructed lower courts to find state laws impliedly preempted where there is a conflict between the federal and state law. *Arizona*, 567 U.S. at 399. While as the Supreme Court recognized in *Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 767, the "Supreme Court has sometimes used different labels to describe the different ways in which federal laws preempt state law," it has recognized at least two branches of conflict preemption: impossibility preemption, and obstacle preemption. *MTBE*, 725 F.3d at 97–104. Impossibility preemption mandates that a court find a state law preempted where "compliance with both federal and state regulations is a physical impossibility." *Florida Lime & Avocado Growers, Inc.*

*v. Paul*, 373 U.S. 132, 142–43 (1963). Obstacle preemption on the other hand, applies where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 372–73 (2000) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

While neither Plaintiffs' Complaint nor their Response is a paragon of clarity with regards to which preemption Congress allegedly contemplated, the Court understands them to be arguing that the Fair Labor Standards Act ("FLSA") impliedly preempts Florida Section 733.702 through both subtypes of conflict preemption. *See* Resp. at 10–12. The Court will therefore assess Plaintiffs' arguments under those two preemption doctrines.

In impossibility preemption and obstacle preemption cases, Courts are to "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)) (internal quotes omitted). This presumption is strengthened further when the federal act touches on areas that are "traditionally the domain of state law." *Hillman v. Maretta*, 569 U.S. 483, 490 (2013). "The heavy burden of overcoming [that] presumption falls on the party alleging preemption." *New York Pet Welfare Association, Inc. v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017). To successfully make an obstacle or impossibility preemption argument, therefore, a Plaintiff needs to demonstrate that the "repugnance or conflict [between the laws is] so direct and positive that the two acts cannot be reconciled." *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 241 (2d Cir. 2006) (internal quotes omitted).

Impossibility preemption applies where an absolute conflict exists between the federal and state law such that compliance with both is impossible. *See MTBE*, 725 F.3d at 97;

6

*Noffsinger v. SSC Niantic Operating Company LLC*, 273 F. Supp. 3d 326, 333 (D. Conn. 2017). The Supreme Court has found state laws preempted under this doctrine where it is "impossible for a private party to comply with both state and federal requirements." *Florida Lime & Avocado Growers*, 373 U.S. at 142–43 ("[A] holding of federal exclusion of state law is inescapable. . . where compliance with both federal and state regulations is a physical impossibility.").

In contrast, obstacle preemption applies when the state law "stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress." *Arizona*, 567 U.S. at 406 (quoting *Hines*, 312 U.S. at 67)). The task of divining Congressional purpose in the obstacle preemption context is ultimately one of statutory interpretation. *New York Pet. Welfare Ass'n*, 850 F.3d at 87. To determine Congressional intent to preempt, the Supreme Court has therefore instructed lower courts to look at the "federal [scheme] as a whole and identify its purpose and intended effects." *Crosby*, 530 U.S. at 373. As is generally true in the field of statutory interpretation, in the obstacle preemption context, a Court can consult legislative history as an aid to determine congressional intent. *See MTBE*, 725 F.3d at 102; *Weyth*, 555 U.S. at 574–76; *see also Auburn Housing Authority v. Martinez*, 277 F.3d 138, 143–44 (2d Cir. 2002) ("[a] Court may. . . look at legislative history to determine the intent of Congress.") (*citing Barnhill v. Johnson*, 503 U.S. 393, 401 (1992)).

### 1. *The legislative intent behind the FLSA and Section 733.702.*

The FLSA is a cornerstone of American employment law. *See generally*, Kati L. Griffith, *The Fair Labor Standards Act at 80: Everything Old Is New Again*, 104 Cornell L. Rev. 557 (2019). Among other things, it granted workers a right to a minimum wage and overtime pay and prohibited the employment of minors in "oppressive child labor." 29 U.S.C. §§ 206, 207, 212. The FLSA was passed by the New Deal Congress in 1938 during the depths of the Great

Depression, in "response to a national concern that the price of American development was the exploitation of an entire class of low-income workers." *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 615 (9th Cir. 2018) (en banc); Griffith, at 557–60. It was an act aimed at protecting "the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profits of others." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944).

Congress's purpose in enacting the FLSA, as recognized by the Supreme Court and evident in the legislative history of the act, was "to aid the unprotected, unorganized and lowest paid of the nation's working population . . . those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945). The Supreme Court has also recognized that Congress's intent in passing the FLSA was broadly "remedial and humanitarian" and that Congress sought "to guarantee eigher [sic] regular or overtime compensation for all actual work or employment." *Tennessee Coal, Iron & R. Co.*, 321 U.S. at 597.

Section 733.702 has a decidedly different purpose. It provides a statute of limitations for claims filed against a decedent's estates being probated in the State of Florida. *May v. Illinois Na. Ins. Co.*, 771 So.2d 1143, 1150 (Fla. 2000). This has the effect of "bar[ring] untimely claims even if 'no objection to the claim is filed.'" *Tsuji v. Fleet*, 366 So.3d 1020, 1026 (Fla. 2023) (quoting Fla. Stat. § 733.702(2)). "The primary purpose of section 733.702 is [thus] to promote an early determination of claims against an estate in order that the claims may be paid and the remaining assets distributed to the beneficiaries in an expeditious manner." *Spohr v. Berryman*, 589 So.2d 225, 229 (Fla. 1991).

Having analyzed both the FLSA and the Florida Probate Code, the Court cannot find an intent (express or implied) by Congress to preempt Section 733.702.

### 2. *Section 733.702 is not in conflict with the FLSA.*

The Court finds that compliance with both statutes is indeed possible. The provision in the Florida nonclaim statute, Section 733.702, which establishes a definite window for claimants to file claims against the Decedent's estate, and the FLSA's statute of limitations are not mutually exclusive. 29 U.S.C. § 255(a); Fla. Stat. Ann. § 733.702. Under Section 733.702 as interpreted by the Florida Courts, Plaintiffs could have timely presented a claim to the executor of the estate and then sued the estate in federal court under the FLSA if the executor rejected the claim. Fla. Stat. Ann. § 733.702; *see Comfort Line Products v. Oceantis LLC*, No. 17-CV-198, 2017 WL 3582695, at *3 (M.D. Fla. Aug. 18, 2017) (describing how claims are made against an estate under § 733.702).

There is also nothing in the text of either statute that would suggest that compliance with both would be a "physical impossibility." *Florida Lime & Avocado Growers, Inc.*, 373 U.S. at 142–43. Rather, just as the Middle District of Florida recognized, "the Florida Probate Code's statute of limitations has a minimal effect on [the FLSA], . . . [and] it does not affect the substantive right to [seek damages]. . . merely the time period in which [they] must be sought." *Admin. Comm. of Wal-Mart Stores, Inc. Associates' Health & Welfare Plan v. Mooradian*, No. 05-CV-1228, 2006 WL 2194176, at *3 (M.D. Fla. Aug. 2, 2006).

Accordingly, the Court finds that Section 733.702 is not impossibility preempted by the FLSA.

       3.   *Section 733.702 does not stand as an obstacle to congressional intent.*

Obstacle preemption is similarly inapplicable. Generally, courts are to start with a strong presumption against preemption in the areas of law traditionally delegated to the States. *See English v. General Electric*, 496 U.S. 72, 79 (1990) ("[C]ongressional intent to supersede state law must be clear and manifest" where the area of state law to be preempted has been "traditionally occupied by the States."). "Probate law . . . has traditionally been within the province of the individual states." *Witco Corp. v. Beekhuis*, 38 F.3d 682, 689 (3d Cir. 1994). It is also well settled that that "federal claims against decedents estates are subject to state probate laws and procedures unless federal law specifically provides otherwise." *Id.* (citing *Pufahl v. Estate of Parks*, 299 U.S. 217, 225 (1936); *Forrest v. Jack*, 294 U.S. 158, 162–63 (1935)).

Here too, Plaintiffs have not presented any case law on the issue of obstacle preemption that persuades the Court that Congress intended to preempt Florida's Probate Law. The cases cited by Plaintiffs merely support the general principle that federal law is supreme to state law, but they do not demonstrate that Section 733.702 is preempted by the FLSA. *See* Resp. at 10–11; *see, e.g.*, *McCulloch v. Maryland*, 17 U.S. 316 (1819) (holding that the supremacy clause prevented the State of Maryland from taxing the Second Bank of the United States); *United States v. California*, 921 F.3d 865, 881 (9th Cir. 2019) (finding certain California laws enacted for the purposes of protecting migrants did not unconstitutionally conflict with federal immigration law). Rather, Plaintiff, without citing to any authority, states that "Courts have recognized that federal statutory claims such as those under the Fair Labor Standards Act (FLSA) are not necessarily bound by state probate deadlines." Resp. at 11. This is not enough to convince the Court that Plaintiffs have carried their burden in demonstrating Congressional intent to preempt.

The Court therefore finds that Section 733.702's statute of limitations applies in this case and Plaintiffs' claims against the Demarest Defendants in their capacity as co-personal representatives of the estate and the Northern Trust company are time-barred. Fla. Stat. Ann. § 733.702. Accordingly, the Court grants Defendants' Motion to Dismiss the FLSA claims against the Northern Trust, and the Demerest Defendants in their capacities as co-representatives of the Estate.

### B. Personal Jurisdiction

Defendants also argue that Plaintiffs' claims against the Demarest Defendants, in their personal capacities, should be dismissed on personal jurisdiction grounds. Mot. at 11–15. The Court agrees.

There are two types of personal jurisdiction: general and specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A court can exercise specific jurisdiction when the instant suit "arises out of or relates to the defendant's contacts with the forum." *Daimler A.G. v. Bauman*, 571 U.S. 117, 137 (2014) (citation modified) (quoting *Helicopteros Natcionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 8 (1984)).

The burden of proving that it would be proper for the court to exercise personal jurisdiction falls on the Plaintiff. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784–85 (2d Cir. 1999). "To allege personal jurisdiction over a defendant, group pleading is not permitted. Instead a plaintiff is required to establish personal jurisdiction separately over each defendant." *In re Aegean Marine Petroleum Network, Inc. Securities Litigation*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021). A plaintiff also must "establish the court's jurisdiction with respect to *each* claim asserted." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (emphasis in original). Moreover, "[a] plaintiff may not rely on 'conclusory

11

statements' and must offer 'factual specificity' in order to establish personal jurisdiction."
*Moussaoui v. Bank of Beirut & the Arab Countries*, No. 23-7332, 2024 WL 4615732, at *1 (2d
Cir. 2024) (citing *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)).

"Where the underlying action is based on a federal statute, [courts] are to apply state
personal jurisdiction rules if the federal statute does not specifically provide for national service
of process." *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990); *see* F.R.C.P. 4(k)(1)(A). The
FLSA does not provide for nationwide service of process. *Henao v. Parts Auth., LLC*, 557 F.
Supp. 3d 490, 495 (S.D.N.Y. 2021) (quoting *Pettenato v. Beacon Health Options, Inc.*, 425 F.
Supp. 3d 264, 273 (S.D.N.Y. Oct. 25, 2019)). Therefore, in this case, Plaintiffs need to
demonstrate that their allegations satisfy the "specific provisions of New York law [that]
determine whether . . . the exercise of jurisdiction over a given defendant" is proper. *Moussaoui*,
2024 WL 4615732, at *2.

New York's long-arm statute permits specific personal jurisdiction to be established over
a non-domiciliary where "the entity transacts any business within the state or contracts anywhere
to supply goods or services in the state" and the "cause of action aris[es] from [those] acts." New
York Civil Practice Law and Rules § 302 ("CPLR § 302").

Here, the allegations in the Complaint against the Demarest Defendants, in their personal
capacities, are not sufficiently plead to establish personal jurisdiction pursuant to CPLR § 302.
Specifically, Plaintiffs have failed to sufficiently plead that the Demarest Defendants: (1)
individually engaged in any misconduct; and (2) that any of their conduct occurred in New York
State.

First, Plaintiffs fail to specifically allege how the Demarest Defendants were individually
involved in the alleged misconduct at issue here. In the Complaint, Plaintiffs only specific

12

allegations against the Demarest Defendants, in their individual capacities, is that they held power of attorney over Decedents estate and were employers under the New York State labor law. Compl. ¶¶ 28–31, 51. Plaintiffs in fact do not allege that the Defendants were individually engaged in the conduct that gives rise to these claims. *See generally* Compl. Instead, they engaged in group pleading, which is "plainly not permitted. . . to establish personal jurisdiction." *See In re Ageane Marine Petroleum Network, Inc. Securities Litigation*, 529 F. Supp. 3d at 135; *see, e.g.*, Am. Compl. at 35 ("Defendants failed to pay Plaintiffs. . . overtime premium); Am. Compl. at 66 ("Through their employment with Defendants, Plaintiffs did not receive any uninterrupted meal break").

Second, even apart from the group pleading deficiencies, Plaintiffs have also not alleged that the Demarest Defendants, acting in their *individual capacities*, transacted business in New York. In the Complaint Plaintiffs allege that the Demarest Defendants became "Power of Attorney over Decedent in or around March 2023." Compl. ¶ 51. They also allege that in "early 2023. . . for a few months[] Plaintiff[s]. . . provid[ed] services to Decedent in the State of Florida." *Id.* ¶ 49. And, "[i]n or around May 2023, Decedent Purchased a home in Clermont Florida. . . and Plaintiffs continued their employment. . . [in Florida] until Decedent passed away." Compl. 52–53. However, Plaintiffs do not allege with factual specificity that the Demarest Defendants, acting as powers of attorney, transacted business in New York. *See generally* Compl. Indeed, the aforementioned allegations are, at best, unclear as to whether the Demarest Defendants had become Power of Attorney prior to Decedents move to Florida. *See* Compl. ¶¶ 49–51. Accordingly, the Court finds that Plaintiffs have not made allegations with sufficient factual specificity regarding Defendants conducting business in the State of New York,

and that they have thus failed to meet their burden of establishing that personal jurisdiction would be proper under CPLR § 302.

Accordingly, the Court finds that under CPLR § 302 the exercise of personal jurisdiction over the Demarest Defendants would be improper. The Court thus dismisses Plaintiffs' claims against the Demarest Defendants.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' motion to dismiss, Dkt. No. 23, is **GRANTED**; and Plaintiffs' claims against Defendants are **DISMISSED without prejudice**; and it is further

**ORDERED** that the Clerk close this action; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      March 9, 2026
            Albany, New York

LAWRENCE E. KAHN
United States District Judge

14